**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS L. WELCH, Plaintiff, | CASE NO. 1:26-CV-01469 |
| vs. | JUDGE J. PHILIP CALABRESE |
| JOSEPH A. MILLER, III, *et al.,* Defendants. | |

**MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Joseph A. Miller, III ("Miller") hereby moves to dismiss the Plaintiff's Complaint, with prejudice, for failure to state a claim. As set forth in the attached Memorandum, Miller is entitled to qualified immunity and dismissal of the First Amendment claims alleged in Counts One and Two of the Complaint, and the Plaintiff is not entitled to prospective declaratory and injunctive relief as a matter of law. The John/Jane Doe Defendants also should be dismissed for the same reasons. As required by N.D. Ohio L.R. 7.1, a Memorandum of Law in Support of this Motion to Dismiss that includes a Table of Contents, Table of Authorities, Summary of Argument, and Statement of Issues is attached for the Court's review and consideration.

Respectfully submitted,

*/s/ Stephen W. Funk*

Stephen W. Funk (0058506)
Alexandra A. Wright (0105006)
ROETZEL & ANDRESS, LPA
222 S. Main St., Suite 400
Akron, Ohio 44308
Telephone: 330.376.2700
E-mail: sfunk@ralaw.com; aawright@ralaw.com

*Attorneys for Defendant Joseph A. Miller, III*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

STATEMENT OF FACTS ........ 1

STATEMENT OF ISSUES ........ 2

SUMMARY OF ARGUMENT ........ 2

LAW AND ARGUMENT ........ 4

I. MILLER IS ENTITLED TO QUALIFIED IMMUNITY AND DISMISSAL OF THE FIRST AMENDMENT CLAIMS ALLEGED IN COUNT ONE AND TWO ........ 4

A. Standard of Review ........ 4

B. Applicable Qualified Immunity Standards ........ 4

C. Miller's Alleged Conduct Does Not Violate The First Amendment ........ 5

1. Plaintiff Cannot Satisfy The State Action Requirement, Which Is A Necessary Element For Any First Amendment Claim ........ 5

2. Plaintiff's Complaint Fails To Satisfy The Applicable Legal Standards For A First Amendment Viewpoint Discrimination Claim ........ 11

3. Plaintiff's Complaint Fails To Satisfy The Applicable Legal Standards For A First Amendment Retaliation Claim ........ 12

D. Miller Is Also Entitled To Qualified Immunity Because It Is Not Clearly Established That His Conduct Violated Welch's Constitutional Rights ........ 16

II. WELCH'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF IN COUNT THREE OF THE COMPLAINT ALSO SHOULD BE DISMISSED ........ 17

III. THE CLAIMS ALLEGED AGAINST THE JOHN DOE AND JANE DOE DEFENDANTS ALSO SHOULD BE DISMISSED ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Ashcroft v. v. al–Kidd,* 563 U.S. 731 (2011) .......... 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) .......... 13

*Benison v. Ross,* 765 F.3d 649 (6th Cir. 2014) .......... 13

*Blackwell v. City of Inskter,* 596 F.Supp.3d 906 (E.D. Mich. 2022) .......... 17

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......... 18

*City of Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022) .......... 18

*Clark v. University of Louisville,* 2022 WL 16756390 (W.D. Ky. 2022) .......... 12

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021) .......... 5

*D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) .......... 4

*Davis v. United States,* 499 F.3d 590 (6th Cir. 2007) .......... 18

*Detiege v. Jackson*, 2025 WL 2380730 (W.D. La. Aug. 15, 2025) .......... 8, 17

*Devore v. McCombie,* 2026 WL 1283880 (N.D. Ill. May 11, 2026) .......... 3, 7, 17

*Dixon v. Clyburn*, 2024 WL 5379014 (D.S.C. Oct. 10, 2024), *report and recommendation adopted*, 2025 WL 354416 (D.S.C. Jan. 31, 2025) .......... 3, 8, 17

*Dye v. Off. of the Racing Comm'n,* 702 F.3d 286 (6th Cir. 2006) .......... 12, 13

*Fox v. Faison,* 798 F.Supp.3d 809, 820 (M.D. Tenn. 2025) .......... 3, *passim*

*Freeman v. Epps*, 2025 WL 2948598 (D. Colo. Sept. 19, 2025) .......... 3, *passim*

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) .......... 13

*Grendell v. Ohio Supreme Court*, 252 F.3d 828 (6th Cir. 2001) .......... 18

*Harris v. Morris,* 2017 WL 8776683 (6th Cir. 2017) .......... 11, 12

*Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019) .......... 11

*Hernden v. Chippewa Valley School Dist.,* 2025 WL 2652993 (6th Cir. 2025)............................16

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs*., 927 F.3d 396 (6th Cir. 2019)...................18

*Kaplan v. Univ. of Louisville,* 10 F.4th 569 (6th Cir. 2021) .................................................. 17, 18

*Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686 (6th Cir. 2022)..............................................5

*Kollaritsch v. Mich. State Univ. Bd. of Trs*., 944 F.3d 613 (6th Cir. 2019)....................................4

*Lindke v. Freed,* 601 U.S. 187 (2024)..................................................................................2, *passim*

*Mackey v. Rising,* 106 F.4th 552 (6th Cir. 2024).................................................................. 6, 9, 11

*Martinez v. City of Aurora,* 174 F.4th 745, 757-759 (10th Cir. 2026)............................................6

*Mattox v. City of Forest Park,* 183 F.3d 515 (6th Cir. 1999) ........................................................16

*McBridge v. Vill. of Michiana,* 100 F.3d 457 (6th Cir. 1996) .......................................................14

*McCormick v. Miami Univ*., No. 1:10-CV-345, 2011 WL 1740018 (S.D. Ohio May 5, 2011), *aff'd*, 693 F.3d 654 (6th Cir. 2012)............................................................19

*McCormick v. Miami Univ*., 693 F.3d 654, 662 (6th Cir. 2012) .....................................................2

*Memphis A. Philip Randolph Inst. v. Hargett,* 978 F.3d 378 (6th Cir. 2020)................................18

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)............................................................... 13, 14, 16

*Novak v. City of Parma,* 932 F.3d 421 (6th Cir. 2019) ..................................................................16

*Pearson v. Callahan,* 555 U.S. 223 (2009)...................................................................................4, 5

*Perry v. May,* 2024 WL 4336364 (N.D. Ohio 2024) .....................................................................13

*Reichle v. Howards,* 566 U.S. 658 (2012).....................................................................................4, 16

*Sanderson v. Myrdal*, 13 N.W.3d 739 (N.D. 2024)........................................................................8

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................................................5

*Sullivan v. Ohio State Univ.*, 764 F.Supp.3d 652 (S.D. Ohio 2025) ..............................................13

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).......................................................... 12, 13

*White v. Pauly*, 580 U.S. 73 (2017) ...............................................................................................16

*Wilkins v. Daniels*, 744 F.3d 409 (6th Cir. 2014)...........................................................................14

*Wurzelbacher v. Jones-Kelley,* 675 F.3d 580 (6th Cir. 2012)............................................13, 15, 16

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003) ........................................................4

**Constitutional Provisions**

Ohio Constitution, Article II, Section 1 ..........................................................................................8

United States Constitution, First Amendment ...................................................................... 1, *passim*

**Statutes**

42 U.S.C. § 1983................................................................................................................... 1, 6, 7

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6)...............................................................................4, 5

## STATEMENT OF FACTS

This civil action was filed by Plaintiff Thomas Welch ("Welch"), acting pro se, in order to allege First Amendment claims under 42 U.S.C. § 1983 against Defendant Joseph A. Miller, III ("Miller"), a State Representative in the Ohio House of Representatives, who is currently serving House District 53 and is running for election to the Ohio Senate. (Doc.#1, Comp. ¶¶ 5-6, 53, PageID#2 and PageID#10). In his Complaint, Welch alleges that, on November 14, 2025, he allegedly tagged the "Joe Miller for Ohio" Facebook page with another content creator's post. (*Id.* at ¶ 23, PageID#6); (Doc.#1-2, Comp. Ex. A, PageID#18). "Within approximately one day after the November 14, 2025 tag," Welch attempted to tag the "Joe Miller for Ohio" Facebook page again, but discovered that he was blocked from accessing the Facebook account. (Doc.#1, Comp. ¶¶ 25-26, PageID#6). After discovering the block, Welch then emailed Rep. Miller's office, and received a telephone call on or about November 15, 2025, from the "office manager" who "admitted that the block had been done by a staff member," but "assured Plaintiff that he was no longer blocked and could post again." (*Id.* at ¶ 29, PageID#7).[1]

After being temporarily blocked from Miller's Facebook account for approximately one day, Welch alleges that he "made numerous attempts to contact Miller's office about this issue and other unrelated constituent issues." (*Id.* at ¶ 34, PageID#7). After being dissatisfied with Rep. Miller's lack of response, Welch contacted Miller's office by "email and social media" on four different occasions, and sent two "demand letters" in which he requested a "new Ford F-250" and "$100,000" in compensation. (*Id.* at ¶¶ 43-45, PageID#9). Miller did not respond to Welch's demands, but allegedly posted a comment on his Facebook page about Welch's complaints on or

---

[1] The Complaint alleges that this telephone call occurred on Saturday, November 15, 2025, but the call-history screenshot attached to the Complaint as Exhibit C shows that the call occurred on Monday, November 17, 2025. (Doc#1-4, Comp. Ex. C, PageID#20).

about June 26, 2026. (*Id.* at ¶ 51, PageID#10). Welch then filed this action against Miller in his individual capacity for damages, and in his official capacity "only for prospective declaratory and injunctive relief." (*Id.* at ¶ 6, PageID#3).[2] The Complaint also names Miller's "office manager" as "a John/Jane Doe Defendant" and other unidentified "staff members, campaign/office agents, page administrators, or social media operators" as John and Jane Doe Defendants. (*Id.* at ¶ 7-8, PageID#3). It alleges two First Amendment claims for Viewpoint Discrimination and Retaliation, and a claim for Prospective Declaratory and Injunctive Relief. (*Id.* at ¶ 56-76, PageID#10-13).

## STATEMENT OF ISSUES

1. Whether Miller is entitled to qualified immunity for the claims alleged in Counts One and Two of the Complaint because the alleged blocking of Welch from tagging or posting on the Joe Miller for Ohio Facebook page does not violate the First Amendment as a matter of law.

2. Whether Miller is entitled to qualified immunity under the second prong of the qualified immunity test where, as here, the alleged conduct did not violate the constitutional standards established by Supreme Court in *Lindke v. Freed*, 601 U.S. 187 (2024), and its progeny.

3. Whether Welch's claims for declaratory and injunctive relief must be dismissed for because they are based upon the same First Amendment claims as Counts One and Two and present allegations of past harm that fail to satisfy the legal standards for declaratory and injunctive relief.

## SUMMARY OF ARGUMENT

Plaintiff's Complaint should be dismissed as a matter of law because, even if all of the facts alleged in the Complaint are true, it does not constitute a First Amendment violation under the Supreme Court's decision in *Lindke v. Freed*, 601 U.S. 187 (2024), and its progeny. In *Lindke*,

---

[2] If Welch sued Miller in his official capacity for money damages, his claim would be barred by the Eleventh Amendment. *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012).

the Supreme Court held that the social media activity of a governmental official does not violate the First Amendment unless the official had "actual authority" to speak on behalf of the State. *Id.* at 194. While only a few courts have had the opportunity to apply *Lindke's* state action test to state legislators, most, if not all, of the courts considering this legal question have concluded that individual legislators — as opposed to executive branch members — lack actual authority to speak on the State's behalf, and that their social media activity, therefore, does not satisfy the state action requirement as a matter of law. *Fox v. Faison,* 798 F.Supp.3d 809, 820 (M.D. Tenn. 2025) (citing cases); *see also* *Freeman v. Epps*, 2025 WL 2948598, at *7 (D. Colo. Sept. 19, 2025) (granting motion to dismiss because individual "legislators . . . do not possess 'actual authority' to speak on behalf of the state"); *Devore v. McCombie,* 2026 WL 1283880, at *4 (N.D. Ill. May 11, 2026) (granting dismissal because legislator's Facebook posts "say nothing about whether Defendant has actual authority to speak on the state's behalf"); *Dixon v. Clyburn*, 2024 WL 5379014, at *5 (D.S.C. Oct. 10, 2024), *report and recommendation adopted*, 2025 WL 354416 (D.S.C. Jan. 31, 2025) (dismissing complaint because it "lack[ed] sufficient factual allegations to show that [the congressman] exercised actual authority to speak on behalf of the Legislature").

For this reason, Miller is entitled to qualified immunity for the First Amendment claims alleged Counts One and Two as a matter of law. There is simply no case law that would clearly establish that a legislator or his staff can be held liable for a First Amendment violation if they allegedly block a person from posting on the legislator's Facebook page. Rather, following *Lindke*, the relevant case law establishes the exact opposite conclusion. *Fox,* 798 F.Supp.3d at 820; *Freeman*, 2025 WL 2948598, at *6-7. Thus, since no reasonable official would have clearly known that the specific conduct at issue violated the First Amendment, Miller is entitled to qualified immunity and dismissal of Counts One and Two as a matter of law. (*See* Argument below).

Second, the Court should dismiss the claim for declaratory and injunctive relief in Count Three. It is well established that declaratory and injunctive relief is a remedy, not an independent cause of action. Additionally, Count Three must be dismissed because it is based upon allegations of past harm, not present or future harm, which is a legal prerequisite for granting prospective declaratory and injunctive relief. (*See* Argument II below). Accordingly, the Court should dismiss the entire Complaint, with prejudice, for failure to state a claim.

## LAW AND ARGUMENT

### I. MILLER IS ENTITLED TO QUALIFIED IMMUNITY AND DISMISSAL OF THE FIRST AMENDMENT CLAIMS ALLEGED IN COUNT ONE AND TWO.

#### A. Standard of Review

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). Although the Court must accept the "well-pled factual allegations" as true, it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citations omitted). Rather, a complaint must allege sufficient facts to establish an entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### B. Applicable Qualified Immunity Standards

It is well established that governmental officials are entitled to qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir.

2019). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right,'" and "can 'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted) (cleaned up).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231-32 (citations omitted). Thus, both the Supreme Court and the Sixth Circuit have held that qualified immunity may be raised in a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 671-675 (2009); *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity. *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022).

The Supreme Court has established a two-part legal test for deciding whether to grant qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Pearson* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Then, if "a constitutional violation could be made out," the Court must decide "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. Here, as discussed below, Miller is entitled to qualified immunity under both prongs.

### C. Miller's Alleged Conduct Does Not Violate The First Amendment.

#### 1. Plaintiff Cannot Satisfy The State Action Requirement, Which Is A Necessary Element For Any First Amendment Claim.

Welch alleges that the alleged "blocking" of him from tagging or posting on the Joe Miller for Ohio Facebook page violated his First Amendment rights. In order to allege a valid First

Amendment claim, however, Plaintiff first must show that Miller's alleged social media activities satisfy the state action requirement, which, as the Supreme Court recently held in *Lindke v. Freed,* 601 U.S. 187 (2024), can be satisfied "only if the official (1) possessed actual authority to speak on behalf of the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Id.* While the state action doctrine often calls for a "fact-intensive inquiry," the Court held in *Lindke* that there are certain legal principles that must be satisfied in order to state a valid First Amendment claim. *Id.* at 197-198; *see also Mackey v. Rising,* 106 F.4th 552, 564 (6th Cir. 2024) ("the ultimate (or mixed) question of whether [the] historical facts rise to the level of 'state action' within the meaning of the Constitution and § 1983 qualifies as a 'legal issue' for the court"). Thus, the question of whether the "specific conduct" at issue constitutes "state action" presents a legal issue that can be decided via a Motion to Dismiss. *See Martinez v. City of Aurora,* 174 F.4th 745, 757-759 (10th Cir. 2026) (district court erred by failing to grant motion to dismiss because "the well-pleaded allegations of the complaint" failed to establish "state action," and thus "her § 1983 claim against Aurora fails as a matter of law") (citing *Lindke*, 601 U.S. at 201).

In this regard, the United States Supreme Court established the applicable legal standards governing whether a government official's social media activity constitutes "state action" in *Lindke*, which involved allegations that a city manager violated the First Amendment by blocking a citizen from criticizing the city's approach to the pandemic on the city manager's Facebook page. *Id.* at 191-94. In determining whether the city manager's alleged conduct was attributable to the State, the Court held that a state official engages in state action only if the official (1) "possessed actual authority to speak on the State's behalf" and (2) "purported to exercise that authority when he spoke on social media." *Id.* at 198. The first prong "must be answered in the affirmative" before the court reaches the second prong. *Fox*, 798 F.Supp.3d at 819. Thus, as the Supreme Court held

in *Lindke,* "[t]he appearance and function of the social-media activity are relevant at the second step, but they cannot make up for a lack of state authority at the first." *Id.*, 601 U.S. at 198.

Under the first step of the state action inquiry, therefore, the Court must determine whether the Complaint alleges sufficient facts to show that Miller possessed "actual authority" to speak on the State's behalf. *Id.* at 201. This question does not present a factual issue because it must be derived from one of the legal sources identified in § 1983: "statute, ordinance, regulation, custom, or usage." *Id.* at 200. "Statutes, ordinances, and regulations refer to written law through which a State can authorize an official to speak on its behalf." *Id.* at 200. "Custom" and "usage" encompass "persistent practices of state officials" that are "so permanent and well settled" that they carry "the force of law." *Id.* "In sum, a defendant… must have actual authority rooted in *written law* or *longstanding custom* to speak for the State. That authority must extend to the speech of the sort that caused the alleged rights deprivation." *Id.* at 201 (emphasis added). Otherwise, "if the plaintiff cannot make this threshold showing of authority, he cannot establish state action." *Id.*

While only a few courts have had the opportunity to apply *Lindke's* actual authority test to state legislators, most, if not all, of the courts that have consider this issue have concluded that individual legislators lack the actual authority to speak on the State's behalf, and that their social media activity, therefore, does not satisfy the state action requirement as a matter of law. *Fox,* 798 F.Supp.3d at 820 (citing cases); *see also, e.g., Freeman*, 2025 WL 2948598, at *6-7 (granting motion to dismiss because "legislators may represent their constituents, debate matters of public concern, and vote on proposed legislation," but "they do not possess 'actual authority' to speak on behalf of the state"); *Devore,* 2026 WL 1283880, at *4 (granting dismissal because legislator's Facebook post "reflect that Defendant regularly used Facebook to provide updates on legislative matters and to communicate with constituents. But the posts say nothing about whether Defendant

has actual authority to speak on the state's behalf, and they thus say nothing about whether Plaintiff can satisfy *Lindke*'s first prong"); *Dixon*, 2024 WL 5379014, at *5-6 (dismissing complaint because it "lack[ed] sufficient factual allegations to show that [the congressman] exercised actual authority to speak on behalf of the Legislature when he spoke via his Twitter accounts"); *Detiege v. Jackson*, 2025 WL 2380730, at *7 (W.D. La. Aug. 18, 2025) ("But while the Louisiana government is intended to be representative, that does not mean individual legislators have authority to solicit input or make announcements on the State's behalf"); *Sanderson v. Myrdal*, 13 N.W.3d 739, 747 (N.D. 2024) (holding that individual state legislator "has no authority to act on behalf of the State in the administration of her Facebook page").

In *Fox,* for example, the district court ruled that a Tennessee legislator did not have "actual authority" to make "official announcements" on the legislator's Facebook page because none of the powers set forth in Article II of the Tennessee Constitution authorized an individual Tennessee legislator to make official announcements on behalf of the State. *Id.*, 798 F.Supp.3d at 821-822. Indeed, because a legislative body only acts on behalf of the State when it acts *collectively* as opposed to *individually*, the court in *Fox* ultimately held that "an individual state legislator *never* has authority to speak *on behalf of* the state, even when he is engaged in his official duties of proposing and voting for or against proposed legislation." *Id.* at 822 (emphasis added). The same conclusion should be reached here. Like Article II of the Tennessee Constitution, Article II, Section 1 of the Ohio Constitution vests legislative power in the General Assembly, not individual state legislators. *Id.* ("The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives"). This vesting is institutional and collective — it grants legislative powers to the General Assembly as a whole, not to its individual members. *Id.* Thus, like the members of the Tennessee state legislature in *Fox*, and the Colorado state

legislature in *Freeman*, individual members of the Ohio General Assembly, including Rep. Miller, do not have the actual authority to speak on behalf of the State. *Fox*, 798 F. Supp.3d at 821-823; *Freeman*, 2025 WL 2948598, at *6-7.

Indeed, in his Complaint, Welch does not allege sufficient facts to show that Miller was granted "actual authority" to speak on behalf of the State. While the Complaint alleges that the Miller for Ohio Facebook page is a "public-facing communication" and "interactive government channel" that is used for the purpose of "communicat[ing] with constituents about Miller's public office and official activities," (Doc.#1, Comp. ¶¶ 1, 17, 58, PageID#1, 5, 11), this allegation is not legally sufficient to show that Miller was granted actual authority to speak on behalf of the State. As the Sixth Circuit has held, a government employee cannot "conjure the power of the State through his own efforts." *Mackey v. Rising*, 106 F.4th 552, 563 (6th Cir. 2024). Thus, in order to satisfy the "actual authority" requirement for state action, the plaintiff "must point to a source ***delegating*** this power to him." *Id.* (emphasis added).

In this case, however, the Complaint does not even attempt to identify a "statute, ordinance, or regulation" that granted Miller "actual authority" to speak on behalf of the State. Moreover, other than conclusory allegations, the Complaint fails to allege sufficient facts to show a "longstanding custom" that would "carry the force of law." *Lindke*, 601 U.S. at 200; *Devore*, 2026 WL 1283880, at *3. Instead, Welch attempts to demonstrate that Miller has actual authority to speak on behalf of the State based upon the *appearance* of the "Joe Miller for Ohio" Facebook page and the alleged *use* of the Facebook page by Miller to communicate with his constituents. (Doc.#1, Comp. ¶¶ 1, 17, 58, PageID#1, 5, 11). As the Court explained in *Lindke*, however, "[t]he appearance and function of the social-media activity are relevant ***at the second step***, but they cannot make up for a lack of state authority at the first." *Id.*, 601 U.S. at 198 (emphasis added).

Thus, in *Lindke*, the Court faulted the plaintiff for focusing on the appearance of the public official's Facebook page because this focus "skip[ped] over th[e] crucial step" of determining whether the official had actual authority to speak on behalf of the State. *Id.* at 199.

Similarly, in *Fox,* the plaintiff also "skip[ped] a step" in attempting to argue that state legislator's use of social media to communicate with his constituents was legally sufficient to satisfy the state action requirement. Although Fox argued that the legislator's use of his Facebook page to communicate with his constituents was a "deeply embedded 'persistent practice…so permanent and well settled' that it is a customary part of the job carrying 'the force of law,'" the *Fox* court rejected this argument as a matter of law, holding that "while it is clearly acceptable—perhaps even customary—for legislators to communicate with their constitu[ents] through the use of social media, legislators, in engaging in such communications, do not speak on behalf of the state." *Fox*, 798 F. Supp.3d at 823-24. Thus, because Fox failed to show that the defendant had actual authority "to speak *for the state* or to make official pronouncements – as opposed to simply functioning as a conduit between the state and constituents," the court held that Fox failed to satisfy the first part of the *Lindke* test as a matter of law. *Id.* at 823 (emphasis in original).

Welch also cannot satisfy the second part of the *Lindke* test. As the Supreme Court explained in *Lindke*, "[f]or social-media activity to constitute state action, an official must not only have state authority—he must also purport to use it." *Id.*, 601 U.S. at 200. A public official "purports to speak on behalf of the State while speaking in his official capacity or when he uses his speech to fulfill his responsibilities pursuant to state law." *Id.* at 201 (citations omitted). "If the public employee does not use his speech in furtherance of his official responsibilities, he is speaking in his own voice." *Id.* Here, other than conclusory allegations, the Complaint does not allege sufficient facts to show that the Miller for Ohio Facebook page was purporting to speak *on*

*behalf of* the State. While the Complaint alleges that Miller used his Facebook page to communicate with his constituents, this allegation does not mean that Miller was speaking on behalf of the State, as opposed to speaking individually on his own behalf. Accordingly, for this additional reason, the Court should conclude that the state action requirement was not met.

In any event, the fact remains that the Court need not consider the second element of the *Lindke* test because, as in *Mackey*, *Fox*, and *Freeman*, Welch cannot get past the first element of the test. *Mackey,* 106 F.4th at 564; *Fox,* 798 F.Supp.3d at 823-824; *Freeman*, 2025 WL 2948598, at *7. Again, there are no facts alleged to show that Miller had actual authority to use his Facebook page to speak on behalf of the State. Accordingly, the Court should conclude that Miller is entitled to qualified immunity and dismissal of the complaint because his alleged conduct does not violate the First Amendment as a matter of law. *Id.*

**2. Plaintiff's Complaint Fails To Satisfy The Applicable Legal Standards For A First Amendment Viewpoint Discrimination Claim.**

In addition to lack of state action, Miller also is entitled to qualified immunity and the dismissal of Count One because his alleged conduct does not constitute "viewpoint discrimination" under the applicable constitutional standards. As the Sixth Circuit has held, viewpoint discrimination occurs when "speech is restricted because of the speaker's ***viewpoint on the topic***— i.e., but for the perspective of the speaker, the speech would normally be permissible." *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019) (emphasis added). To allege a viewpoint discrimination claim, therefore, a plaintiff must plead sufficient facts to identify the "speech or viewpoint that caused the defendants to discriminate against him." *Harris v. Morris,* 2017 WL 8776683, at *3 (6th Cir. 2017). Thus, in *Harris*, the Sixth Circuit affirmed the dismissal of a viewpoint discrimination claim because, although the plaintiff "alleged that the [school's] grievance process violated his right to free speech and discriminated against him on his

viewpoint…he never cited any speech or viewpoint that caused the defendants to discriminate against him." *Id.* Other courts have reached the same conclusion. *Clark v. University of Louisville*, 2022 WL 16756390, at *7 (W.D. Ky. 2022) (dismissing viewpoint discrimination claim because plaintiff failed to "identif[y] the viewpoint on which the defendants based their discrimination").

Here, the Complaint only alleges that, after he tagged "Joe Miller for Ohio" in a "political Facebook post[]" on November 14, 2025, Miller's staff or administrators blocked him from posting on the page. (Doc.#1, Comp. ¶ 2, PageID#2). While Plaintiff makes the conclusory allegation that the "block was not a neutral moderation decision" but was imposed because of "Plaintiff's political viewpoint" and "protected criticism/association," he cites no facts to support this conclusory allegation. (*Id.* at ¶ 3). Indeed, Welch does not even identify the content of the tagged post at issue. Other than alleging the tagging of another creator's post, therefore, the Complaint fails to allege sufficient facts to identify the political viewpoint of the post, let alone to show that Miller blocked the post because of its political viewpoint. Accordingly, for this additional reason, the Court should conclude that Count One fails to allege sufficient facts to show that the alleged conduct violated the First Amendment's protection against viewpoint discrimination. *Harris*, 2017 WL 8776683, at *3; *Clark*, 2022 WL 16756390, at *7-9.

**3. Plaintiff's Complaint Fails To Satisfy The Applicable Legal Standards For A First Amendment Retaliation Claim.**

Like Count One, there are additional legal reasons why Miller is entitled to qualified immunity and the dismissal of the First Amendment retaliation claim in Count Two. In order to state a First Amendment retaliation claim, a plaintiff must show that (1) he "engaged in protected speech," (2) he suffered "an adverse governmental action," and (3) "there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Dye v.*

*Off. of the Racing Comm'n,* 702 F.3d 286, 294 (6th Cir. 2006). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Perry v. May,* 2024 WL 4336364, at *10 (N.D. Ohio 2024) (citations omitted).

In the First Amendment retaliation context, an "adverse action" may constitute retaliation if it "would chill or silence a person of ordinary firmness from future First Amendment Activities." *Benison v. Ross,* 765 F.3d 649, 659 (6th Cir. 2014). In this regard, the Sixth Circuit has held that a number of different types of actions can constitute "retaliation" under the First Amendment. *See, e.g., Benison*, 765 F.3d at 659 (filing of a lawsuit to recover sabbatical compensation is an adverse action); *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (threat to economic livelihood and defamation); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (search and seizure of property); *Dye v. Office of the Racing Com'n*,, 702 F.3d 286, 302 (6th Cir. 2012) (demotion, termination, and decrease in work days and pay); *Sullivan v. Ohio State Univ.*, 764 F.Supp.3d 652, 665 (S.D. Ohio 2025) (declining to renew a university lecturer's contract).

Not every action, however, is "constitutionally cognizable," *Thaddeus,* 175 F.3d at 396, particularly where, as here, the alleged adverse action is "'inconsequential,' resulting in nothing more than a 'de minimis injury.'" *Bell,* 308 F.3d at 606 (citations omitted). Indeed, it "trivialize[s] the First Amendment to allow plaintiffs to bring ... claims for any adverse action[,] no matter how minor." *Wurzelbacher v. Jones-Kelley,* 675 F.3d 580, 584 (6th Cir. 2012). Thus, "when a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher,* 675 F.3d at 584 (citations omitted); *see also Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005) (affirming dismissal of First Amendment retaliation claim because allegations of "damage to his professional reputation and emotional anguish and distress" are not legally sufficient to constitute an "adverse action").

Here, Plaintiff's retaliation claim is based on three alleged "adverse actions" – (1) the initial blocking of Welch from accessing and commenting on the "Joe Miller for Ohio" Facebook page, (2) Miller's alleged "ignoring [of Welch] after admitting staff involvement," and (3) the June 26, 2026 Facebook posting by Miller that allegedly was "ridiculing or minimizing [Welch's] complaint instead of providing a meaningful remedy." (Doc.#1, Comp. ¶ 66, PageID#12). Before explaining why the temporary, blocking action does not constitute an "adverse action" under the First Amendment, we first want to emphasize that any comments or statements made by or on behalf of Miller in response to Welch's complaints are constitutionally protected by the First Amendment, and cannot legally serve as the basis of an "adverse action" as a matter of law. *Mezibov,* 411 F.3d at 722 ("[t]he proper exercise by [government officials] of their own free speech rights cannot serve as the basis for imposition of liability upon those individuals" in a First Amendment retaliation case) (quoting *McBridge v. Vill. of Michiana,* 100 F.3d 457, 462 (6th Cir. 1996)). Thus, in *Mezibov*, the Sixth Circuit held that "[i]t would be inconsistent with core First Amendment principles and basic notions of fairness not to allow Allen to respond to these allegations to the extent his out-of-court comments were not defamatory, even if that response was (quite naturally) prompted by constitutionally protected speech by Mezibov." *Id.* at 722.

Similarly, it would be inconsistent with the First Amendment to hold Miller liable for his June 26th Facebook comment about Welch, even if that response was prompted by Plaintiff's constitutionally protected speech. This rationale also applies to the Complaint's allegations about Miller's alleged "ignoring [of Welch] after admitting staff involvement." (Doc.#1, Comp. ¶ 66, PageID#12). Rep. Miller is not obligated to engage with Welch, or to respond to Welch's concerns or comments. As the Sixth Circuit has held, the First Amendment protects "freedom of speech," but it also protects the "right not to speak." *Wilkins v. Daniels*, 744 F.3d 409, 414 (6th Cir. 2014).

Thus, it would be clearly inconsistent with the First Amendment if Miller could be held liable for exercising his First Amendment right *not* to speak.

With respect to the alleged "adverse action" relating to the temporary blocking of Plaintiff from posting on the Joe Miller for Ohio Facebook page, this allegation also fails to state a valid retaliation claim as a matter of law. First, for the reasons discussed above, Miller did not have the actual authority to speak on behalf of the State when he engaged in the specific conduct at issue. Second, the alleged action is *de minimis* and "inconsequential" when compared to the other types of "adverse actions" that have been recognized by the Sixth Circuit. *Wurzelbacher*, 675 F.3d at 584-585 (affirming dismissal of First Amendment retaliation claim) (citing cases). Welch did not suffer a threat to his economic livelihood, was not defamed, did not suffer a search and seizure, did not experience the public disclosure of intimate or embarrassing information, and was not physically or verbally threatened. *Id.* Rather, Welch was merely blocked from posting on Miller's Facebook page for only a brief period of time. (Doc.#1, Comp. ¶¶ 25-29, PageID#6-7).

In this regard, a legal ruling that Miller's alleged blocking action was "inconsequential" is further "supported by the fact that [Welch] was not deterred or chilled in the exercise of his First Amendment rights as a result of defendants' wrongful conduct." *Wurzelbacher,* 675 F.3d at 585. Here, Welch has admitted that he was not deterred or chilled in the exercise of his First Amendment rights because his Complaint specifically alleges that Welch continued to contact Miller by "email and social media" at least four more times after the temporary blocking of Welch from the "Joe Miller for Ohio" Facebook page. (Doc.#1, Comp. ¶¶ 43-45, 51, PageID#10). The alleged temporary blocking action, therefore, was " 'inconsequential' as a matter of law" because it did not actually chill or silence "a person of ordinary firmness" from future First Amendment activities. *Wurzelbacher,* 675 F.3d at 585.

Third, Count Two must be dismissed because Welch has "failed to allege a 'specific' or 'concret[e]' personal injury." *Mezibov*, 411 F.3d at 722 (quoting *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999)). Here, Welch's Complaint merely alleges that Miller's temporary blocking caused "significant distress, humiliation, anxiety, and a feeling of betrayal." (Doc.#1, Comp. ¶¶ 48, 70, PageID#9, 12). Such generalized allegations, however, are not legally sufficient to allege a retaliation claim under binding Sixth Circuit precedent. *See* *Wurzelbacher*, 675 F.3d at 584-585 (affirming dismissal of First Amendment retaliation claim because plaintiff alleged no specific or concrete injury other than "emotional distress, harassment, personal humiliation, and embarrassment"); *Mezibov*, 411 F.3d at 722 (affirming dismissal of retaliation claim because it was based upon alleged "damage to his professional reputation and emotional anguish and distress"); *Hernden v. Chippewa Valley School Dist.*, 2025 WL 2652993, at *6-7 (6th Cir. 2025) (alleged injury must be based upon more than "emotional harm," and that "fear of investigation" is too speculative to establish a First Amendment retaliation claim). Accordingly, as in *Wurzelbacher* and *Mezibov,* the Court should dismiss the retaliation claim in Count Two.

### D. Miller Is Also Entitled To Qualified Immunity Because It Is Not Clearly Established That Their Conduct Violated Welch's Constitutional Rights.

Miller is also entitled to qualified immunity under the second prong of the test. "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right,'" and "can 'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Reichle*, 566 U.S. at 664 (citations omitted) (cleaned up). As the Supreme Court has held, however, "clearly established law should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). Rather, the clearly established law must be "particularized" to the facts of the case. *Id.; see also* *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Here, even if it were clearly established that legislators cannot engage in viewpoint discrimination or retaliation under the First Amendment, the fact remains that courts have not reached consensus on how the First Amendment applies to a legislator's social media activities. While "the right to free expression in public forums has been clearly established for decades, the applicability of those doctrines to social media is anything but." *Blackwell v. City of Inskter,* 596 F.Supp.3d 906, 924 (E.D. Mich. 2022) (awarding qualified immunity to Mayor). Although the Supreme Court in *Lindke* established the test for state action in the social media context in 2024, the Supreme Court did not "clearly establish" that individual legislators could be held liable for a First Amendment violation by blocking a post on their social media platform. Indeed, since *Lindke*, "most, if not all, courts considering this question have concluded [that] legislators — as opposed to executive branch members — individually lack 'actual authority to speak on the State's behalf,' and thus their social media activity is not conducted under the color of law." *Freeman,* 2025 WL 2948598, at *6 (citing *Lindke,* 601 U.S. at 198 and *Fox,* 798 F.Supp.3d at 820); *see also Devore,* 2026 WL 1283880, at *4; *Dixon*, 2024 WL 5379014, at *5; *Detiege,* 2025 WL 2380730, at *7. Thus, under the case law, a reasonable legislator would not have clearly known that they could be held liable for a First Amendment violation merely because they blocked a person from accessing the legislator's Facebook page or responded to a constituent with a comment on the legislator's Facebook page. Accordingly, for all these reasons, Miller is also entitled to qualified immunity and the dismissal of Counts One and Two under the clearly established prong of the test.

## II. WELCH'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF IN COUNT THREE OF THE COMPLAINT ALSO SHOULD BE DISMISSED.

The claim for declaratory and injunctive relief must be dismissed for several legal reasons:

1. First, it is well established that declaratory and injunctive relief is a remedy that does not create an independent cause of action. *See Kaplan v. Univ. of Louisville,* 10 F.4th 569,

587 (6th Cir. 2021) ("Injunctive relief is not a cause of action, it is a remedy"); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (explaining that the Declaratory Judgment Act "does not create an independent cause of action"); *see also* *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("The Declaratory Judgment Act does not provide a cause of action when a party ... lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief."). Thus, because the First Amendment claims alleged in Counts One and Two both fail as a matter of law, it automatically follows that the claim for declaratory and injunctive relief in Count Three must be dismissed as well. *Id.*

2. Second, even if Plaintiff's First Amendment claims could survive dismissal, the fact remains that the Complaint fails to plead sufficient facts to warrant prospective declaratory or injunctive relief. To have Article III standing to seek declaratory or injunctive relief, a plaintiff "must show actual present harm or a significant possibility of future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). "Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief" because "the fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)). "Put another way, the 'threatened injury must be *certainly impending* to constitute injury in fact, and [a]llegations of *possible* future injury are not sufficient.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (citations omitted) (cleaned up) (emphasis in original).

Here, Welch only alleges past harm. He does not allege any actual, concrete, particularized or imminent threat of present or future harm to have standing to seek declaratory or injunctive relief. The fact that Plaintiff was temporarily blocked once in the past from posting on the "Joe

Miller for Ohio" Facebook page does not establish a "real or imminent" threat of being blocked again. In fact, the Complaint admits that Welch was unblocked within approximately one day and remains unblocked to this day. (Doc.#1, Comp. ¶ 25-29, PageID#6-7). Thus, for this additional reason, Welch's request for declaratory and injunctive relief should be dismissed.

## III. THE CLAIMS ALLEGED AGAINST THE JOHN DOE AND JANE DOE DEFENDANTS ALSO SHOULD BE DISMISSED.

As previously discussed, the Complaint also includes a number of John Doe and Jane Doe Defendants. (Doc.#1, Comp. ¶ 7-8, PageID#3). Although none of the John/Jane Doe Defendants have been identified or served, all of the claims against them must "fail for the same reasons" as the claims alleged against Defendant Welch. *See* *McCormick v. Miami Univ.*, No. 1:10-CV-345, 2011 WL 1740018, at *19 (S.D. Ohio May 5, 2011), *aff'd*, 693 F.3d 654 (6th Cir. 2012) (dismissing "all claims against Defendants John and Jane Does because the claims against those Defendants fail for the same reasons as do her claims against the named Defendants"). Thus, this entire action should be dismissed, with prejudice, for failure to state a claim.

## CONCLUSION

For these reasons, the Court should grant dismiss all of the claims alleged in the Complaint, with prejudice, for failure to state a claim.

Respectfully submitted,

*/s/ Stephen W. Funk*

Stephen W. Funk (0058506)
Alexandra A. Wright (0105006)
ROETZEL & ANDRESS, LPA
222 South Main Street, Suite 400
Akron, Ohio 44308
Telephone: 330.376.2700
sfunk@ralaw.com; aawright@ralaw.com

*Attorneys for Defendant Joseph A. Miller, III and All Jane Doe/John Doe Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to N.D. Ohio Local Rule 7.1(f), I hereby certify that the foregoing Memorandum complies with the 20-page limitation for memorandums filed in support of dispositive motions in unassigned cases.

*/s/ Stephen W. Funk*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August, 2026, the foregoing *Motion to Dismiss* was served via both U.S. Mail and electronic mail upon Plaintiff Thomas Welch at the address listed on the Complaint, 3608 Edgewood Drive, Lorain, Ohio 44053, thomaswelch43207@yahoo.com

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)